IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HUMANA, INC.; UNITED HEALTHCARE SERVICES, INC.; and AETNA INC., | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. G-16-0354 |
| v. | § § | |
| SHRADER & ASSOCIATES, LLP, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Humana, Inc., United Healthcare Services, Inc., and Aetna Inc. ("Plaintiffs"), bring suit against defendant Shrader & Associates, LLP ("Defendant" or "Shrader") asserting claims for Equitable Lien, Constructive Trust, and Equitable Restitution (All ERISA[1] Plans) (Count I), Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A) (All Medicare Plans) (Count II), Declaratory Judgment as to Shrader's Obligation to Reimburse Medicare Benefits (All Medicare Plans) (Count III), Unjust Enrichment/Money Had and Received (All Health Plans) (Count IV), and Request for Declaratory Relief (All Health Plans) (Count V).[2] Pending before the court is Defendant Shrader & Associates, LLP's Motion to Dismiss, for a More

---

[1]Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 <u>et seq.</u>

[2]Plaintiffs' Amended Complaint, Docket Entry No. 62, pp. 25-31 ¶¶ 63-87.

Definite Statement, and to Sever ("Motion to Dismiss") (Docket Entry No. 63); Defendant Shrader & Associates LLP's Memorandum of Law in Support of Its Motion to Dismiss, for a More Definite Statement, and to Sever ("Defendant's Memorandum") (Docket Entry No. 64), Plaintiffs' Response to Defendant's Motion to Dismiss, for a More Definite Statement, and to Sever ((Docket Entry No. 68) ("Plaintiffs' Response"); Defendant's Reply in Support of Its Motion to Dismiss, for a More Definite Statement, and to Sever ("Defendant's Reply") (Docket Entry No. 69); and the Joint Motion for Continuance (Docket Entry No. 92). For the reasons stated below, Defendant's Motion to Dismiss (Docket Entry No. 63) will be granted in part and denied in part, the Amended Docket Control Order (Docket Entry No. 91) will be vacated, and the Joint Motion for Continuance (Docket Entry No. 92) will be denied as moot.

## I. Plaintiffs' Allegations

Plaintiffs allege that they are "all non-governmental insurers, sponsors, and administrators of health benefit plans, under which they provide or have provided health benefits to treat injuries, including Asbestos Injuries, suffered by Plan Members,"[3] including at least fifteen Matched Claimants who are or have been represented by Shrader.[4] Plaintiffs allege that all of the Matched

---

[3]Id. at 5 ¶ 8.

[4]Id. at 4 ¶ 1 and 6 ¶ 14. See also id. at 3 defining "Claimant" to mean,

(continued...)

Claimants received healthcare coverage from one or more of their ERISA or Medicare Advantage ("MA") plans, the Health Plans paid to treat the Matched Claimants' asbestos-related medical conditions, and that plan documents and/or federal law obligate Shrader and the Matched Claimants to compensate the Health Plans from settlement funds held by Shrader.[5] Plaintiffs seek

> all available relief, including equitable relief under § 502(a)(3) of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA") and as Medicare Advantage Plan providers, as defined in the Balanced Budget Act of 1997, the Medicare Prescription Drug Improvement and Modernization Act of 2003, as well as the federal regulations promulgated under those laws.[6]

Plaintiffs also seek

> equitable relief in the form of restitution of the amounts they paid for treatment of Matched Claimants' Asbestos Injuries[;] . . . imposition of a constructive

---

[4](...continued)
[a]n individual who is pursuing, or has in the past pursued, a recovery for injuries allegedly caused by exposure to asbestos or asbestos-containing products. The term includes individuals who are seeking recovery through the tort system, compromise or settlement, workers' compensation, the bankruptcy trust system, or a combination of these;

defining "Matched Claimant" to mean,

> [a] Claimant represented by Shrader who has also been identified as a Plan Member;

and defining "Plan Member" to mean,

> [a]n individual who receives health benefits from one of the Health Plans.

[5]Id. at 4-5 ¶¶ 1-12.

[6]Id. at 4 ¶ 3.

trust over a portion of the total Asbestos Recoveries made by each Matched Claimant equal to the amount necessary to fully reimburse the Health Plans for all health benefits provided to or on behalf of that Matched Claimant[; and]. . . imposition of an equitable lien to enforce their contractual rights to reimbursement pursuant to the terms of the health benefit plans under which they provided health benefits to Matched Claimants.[7]

## II. <u>Motion to Dismiss</u>

Shrader moves the court to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim for which relief may be granted, and Rule 12(b)(7) for absence of indispensable parties. Alternatively, Shrader seeks an order requiring Plaintiffs to submit a more definite statement pursuant to Rule 12(e), and an order to sever pursuant to Federal Rule of Civil Procedure 20. When faced with a Rule 12(b)(1) jurisdictional challenge to subject matter jurisdiction and other challenges on the merits, courts must consider the jurisdictional challenge before addressing challenges based on the merits. <u>Alabama-Coushatta Tribe of Texas v. United States</u>, 757 F.3d 484, 487 (5th Cir. 2014).

## A. **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Shrader argues that Plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because

---

[7]<u>Id.</u> ¶ 4.

(i) their claims implicate recoveries from asbestos bankruptcy trusts and are thus within the exclusive jurisdiction of the courts establishing the trusts and (ii) any claims the Insurers assert based on FEHBA plans sound in state law, and the Court lacks any basis for supplemental jurisdiction over them.[8]

Plaintiffs respond that they are not asserting FEHBA-related claims, and that "Shrader's Motion should be denied as moot to the extent it seeks such relief."[9]   Plaintiffs respond that the relationship of their claims to asbestos bankruptcy trusts does not deprive this court of jurisdiction because they

seek reimbursement from *any* asbestos-related recoveries held by Shrader on behalf of its clients, both identified and as-yet unidentified.  This includes recoveries made from asbestos trusts; but it also includes recoveries from settlements or judgments against solvent asbestos defendants in litigation, and recoveries from any other sources.[10]

Plaintiffs argue that "[n]ot even Shrader contends that this Court lacks subject matter jurisdiction over the Health Plans' claims relating to recoveries obtained through sources other than asbestos trusts.  Such claims cannot be dismissed [for lack of subject matter jurisdiction]."[11]

1.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.  "A case is properly

---

[8]Defendant's Memorandum, Docket Entry No. 64, p. 12.

[9]Plaintiffs' Response, Docket Entry No. 68, p. 14.

[10]Id. at 12.

[11]Id.

dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact and matters outside the pleadings such as testimony and affidavits are considered. Id. Because Shrader has not submitted evidence outside the pleadings in support of its Rule 12(b)(1) Motion to Dismiss, the motion is a facial attack; and the court's review is limited to whether the complaint sufficiently alleges jurisdiction. As the parties asserting federal jurisdiction, Plaintiffs bear the burden of establishing the sufficiency of their jurisdictional allegations. Alabama-Coushatta Tribe, 757 F.3d at 487.

2.  Analysis

Citing 11 U.S.C. § 524(g), Shrader argues that the court lacks subject matter jurisdiction because Plaintiffs seek recovery from asbestos bankruptcy trusts, exclusive jurisdiction over which resides in the courts that created them. Asserting that

§ 524(g)(1)(B) injunctions "enjoin entities from taking legal action for the purpose of *directly or indirectly* collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a[n abestos] trust,"[12]

Shrader argues that Plaintiffs "are attempting to receive indirect payment for medical expense claims that they expressly allege were 'paid in whole or in part by a[n asbestos] trust.'"[13] Asserting that "[s]uch an action necessarily violates the various § 524(g) injunctions the [plaintiffs] acknowledge were established in connection with the asbestos trusts that made (or will make) payments from which the [plaintiffs] seek to recover,"[14] Shrader argues that "resolving the parties' competing positions on this issue will necessarily entail construing and applying the terms of the particular § 524(g) injunction — a task reserved to the exclusive jurisdiction of the court ordering it."[15]

Plaintiffs argue that the court has subject matter jurisdiction because to the extent that their claims relate to recoveries from asbestos trusts, they do not involve the validity, application, construction, or modification of any injunction issued in connection with the creation of an asbestos trust,[16] and that

---

[12]Defendant's Memorandum, Docket Entry No. 64, p. 13.

[13]Id. at 13-14.

[14]Id. at 14.

[15]Id.

[16]Plaintiffs' Response, Docket Entry No. 68, p. 13.

"any 524(g) Injunctions that were implemented in connection with creation of the Asbestos Trusts that have paid or will pay Asbestos Recoveries to Shrader on behalf of its clients have no bearing on this action."[17] Citing Quigley Co., Inc. v. Angelos (In re Quigley Co., Inc.), 676 F.3d 45, 60-62 (2d Cir. 2012), and Johns-Manville Corp. v. Chubb Indemnity Insurance Co. (In re Johns-Manville Corp.), 600 F.3d 135 (2d Cir. 2010) (per curiam), Plaintiffs argue that § 524(g) does not deprive the court of jurisdiction because the funds that they seek "have in fact *already* been paid, and are now in Shrader's possession, putting them outside of the scope of [§] 524(g),"[18] and because the claims asserted in this action "arise out of Shrader's independent, direct obligation to properly handle the funds once . . . received . . . from any asbestos trust."[19]

Citing In re G-I Holdings Inc., 420 B.R. 216, 274 (D.N.J. 2009), and In re Armstrong World Industries, Inc., 348 B.R. 136, 153 (D. Del. 2006), Shrader responds that

> Section 524(g) injunctions enjoin entities from taking legal action to receive payment out of the funds § 524(g)(1)(B) identifies (i.e., funds "to be paid" by asbestos trusts). Nothing in § 524(g)(1)(B) limits the application of § 524(g) injunctions once asbestos trusts distribute those funds.
>
> Moreover, accepting the Insurers' interpretation would eviscerate § 524(g)(3)[(A)]. Section 524(g)(3) [(A)(ii)] provides that if certain requirements are met,

---

[17]Id. at 14.

[18]Id. at 13.

[19]Id. at 14.

> "no entity that . . . becomes a direct or indirect
> transferee of . . . any assets of . . . a debtor or trust
> that is the subject of the injunction shall be liable
> with respect to any claim or demand made against such
> entity by reason of its becoming such a transferee." A
> transferee of trust assets has, by definition, already
> been paid by that trust.[20]

Asserting that the funds Plaintiffs seek are funds that the Matched Claimants obtained from asbestos trusts because of the debtors' tort liability that was discharged in bankruptcy, Shrader also replies that this court lacks jurisdiction over Plaintiffs' claims because "[t]his proceeding thus involves at least the application or construction of an injunction 'enjoin[ing] entities from taking legal action for the purpose of directly or indirectly . . . receiving payment . . . with respect to any claim or demand . . . to be paid' by an asbestos trust."[21]

   (a)  Applicable Law

     Section 524(g) is a special provision of the Bankruptcy Code created by Congress to provide "supplemental injunctive relief for an insolvent debtor facing the unique problems and complexities associated with asbestos liability." In re Combustion Engineering, Inc., 391 F.3d 190, 234 (3d Cir. 2004). Under § 524(g) a debtor's reorganization centers around a statutorily-created trust the purpose of which is to preserve and facilitate the resolution of

---

[20]Defendant's Reply, Docket Entry No. 69, pp. 4-5 (quoting 11 U.S.C. § 524(g)(3)(A)).

[21]Id. at 6.

current asbestos claims, while simultaneously relieving the insolvent debtor from the uncertainty associated with impending future asbestos litigation. See 11 U.S.C. § 524(g)(1)-(2). Such trusts are funded by the reorganized debtor's assets, stock, insurance, and funds from contributions and settlements with third parties. In re Combustion Engineering, Inc., 391 F.3d at 234 & n.45 (citing § 524(g)(2)(B)). The trust assumes the debtor's liabilities, which in turn gives the debtor the opportunity to restructure itself as an economically-viable entity unencumbered by present and future asbestos-related liabilities. Id. In exchange for funding the trust, the debtor, its predecessors, successors in interest, and affiliates receive broad protection from asbestos-related claims. Id. See 11 U.S.C. § 524(g)(3)-(4).

Once an asbestos trust is formed and an injunction put in place, the injunction requires — or "channels" — all asbestos claimants to pursue any remedies that they may have against the trust so that such claims can be resolved in accordance with the debtor's plan of reorganization. G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.), 328 B.R. 691, 695 (D.N.J. 2005). As the Third Circuit has explained:

> Channeling asbestos-related claims to a personal injury trust relieves the debtor of the uncertainty of future asbestos liabilities. This helps achieve the purpose of Chapter 11 by facilitating the reorganization and rehabilitation of the debtor as an economically viable entity. At the same time, the rehabilitation process served by the channeling injunction supports the equitable resolution of asbestos-related claims. In

theory, a debtor emerging from a Chapter 11 reorganization as a going-concern cleansed of asbestos liability will provide the asbestos personal injury trust with an "evergreen" source of funding to pay future claims. This unique funding mechanism makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process. To achieve this relief, a debtor must satisfy the prerequisites set forth in § 524(g) in addition to the standard plan confirmation requirements.

In re Combustion Engineering, Inc., 591 F.3d at 234.

Under certain limited circumstances a channeling injunction can enjoin claims against third parties that are directly or indirectly involved in the asbestos litigation. See 11 U.S.C. § 524(g)(4)(A)(ii). The ability of a § 524(g) channeling injunction to enjoin actions against third parties is limited, however, to situations where the claims would affect the res of the trust, the third party is alleged to have derivative liability for tort claims against the debtor, or the third party's alleged liability arises as a legal consequence of one of the four relationships between the debtor and the third party enumerated in 11 U.S.C. § 524(g)(4)(A)(ii).[22] See In re Quigley, 676 F.3d at 62.

---

[22]Section 524(g)(4)(A)(ii) provides:

Notwithstanding the provisions of section 524(e), such an injunction may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arises by reason of--

(continued...)

See also In re Combustion Engineering, Inc., 391 F.3d at 234 (citing MacArthur Co. v. Johns-Manville Corp., 837 F.2d at 92-93 (2d Cir. 1988) (holding that a channeling injunction applied only to "third parties [who] seek to collect out of the proceeds of Manville's insurance policies on the basis of Manville's conduct")); In re Johns-Manville Corp., 600 F.3d at 153 ("[§] 524(g) only 'limits the situations where a channeling injunction may enjoin actions against third parties to those where a third party has derivative liability for the claims against the debtor'").

---

[22](...continued)
(I) the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor;

(II) the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party;

(III) the third party's provision of insurance to the debtor or a related party; or

(IV) the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to--

    (aa) involvement in providing financing (debt or equity), or advice to an entity involved in such a transaction; or

    (bb) acquiring or selling a financial interest in an entity as part of such a transaction.

11 U.S.C. § 524(g)(4)(A)(ii).

(b)  Application of the Law to Plaintiffs' Allegations

Plaintiffs do not allege and Shrader does not argue that the claims asserted in this action would effect the res of an asbestos trust, that Shrader is derivatively liable for tort claims against an asbestos debtor, or that Shrader's liability arises as a legal consequence of one of the four relationships between a debtor and the third party enumerated in 11 U.S.C. § 524(g)(4)(A)(ii), i.e., Shrader is not alleged to have ever owned a financial interest in any of the debtors, to have provided insurance to them, to have engaged in management of any of the debtors, or to have entered into a transaction with any debtors that altered their corporate structure.  Instead, Plaintiffs premise Shrader's liability on contractual agreements and statutory requirements of ERISA and MA health benefit plans that they allege provided asbestos related health care to Shrader's clients who have made claims and received payments from asbestos trusts.  Neither contractual agreements nor statutory requirements that do not otherwise meet the requirements of § 524(g) can serve as the link in a chain connecting a third party's liability to an asbestos debtor for purposes of extending the channeling injunction to non-debtors.  See In re Federal-Mogul Global Inc., 411 B.R. 148, 166 (Bankr. D. Del. 2008) ("The statute does not permit extension of a channeling injunction to cover 'claims . . . alleg[ing] independent liability, wholly separate from any liability involving [the debtor].'").  Shrader argues that nothing in § 524(g)(1)(B) limits the application of § 524(g)

-13-

injunctions once asbestos trusts pay claimants, but since the Plaintiffs only seek recovery from funds that asbestos trusts have already paid to claimants, Plaintiffs' claims cannot be enjoined and channeled to the trusts under § 524(g). Accordingly, the court concludes that the claims asserted in this action do not involve the validity, application, construction, or modification of any injunction issued in connection with the creation of an asbestos trust,[23] and that any 524(g) channeling injunctions implemented in connection with an asbestos trust that has paid or will pay asbestos recoveries to Shrader on behalf of its clients have no bearing on this action.

Shrader's contention that the court lacks jurisdiction because Shrader is a transferee of assets of an asbestos trust that under § 524(g)(3)(A)(ii) cannot be "held liable with respect to any claim or demand against it by reason of its becoming such a transferee,"[24]

---

[23]Plaintiffs' Response, Docket Entry No. 68, p. 13.

[24]The complete text of § 524(g)(3)(A) is:

If the requirements of paragraph (2)(B) are met and the order confirming the plan of reorganization was issued or affirmed by the district court that has jurisdiction over the reorganization case, then after the time for appeal of the order that issues or affirms the plan--

> (i) the injunction shall be valid and enforceable and may not be revoked or modified by any court except through appeal in accordance with paragraph (6);
>
> (ii) no entity that pursuant to such plan or thereafter becomes a direct or indirect transferee
> (continued...)

is not persuasive because the claims asserted in this action are not being asserted against Shrader by reason of its becoming a transferee of assets from an asbestos trust but, instead, by reason of Shrader's alleged violation of contractual provisions of ERISA and MA health benefit plans and the statutes governing them. Shrader fails to cite any authority in support of its contention that § 524(g)(3)(A)(ii) or any other part of § 524(g) precludes claims such as those asserted in this action.

The two opinions that Shrader cites in support of its argument that § 524(g)(3)(A)(ii) protects it from liability are inapposite as both opinions are orders confirming plans of reorganization that merely state that the parties being protected by the relevant channeling injunctions satisfy the statutory requirements for receiving protection including those set forth in § 523(g)(3)(A)(ii). <u>See</u> <u>In re G-I Holdings</u>, 420 B.R. at 274; <u>In re</u>

---

[24](...continued)
of, or successor to any assets of, a debtor or trust that is the subject of the injunction shall be liable with respect to any claim or demand made against such entity by reason of its becoming such a transferee or successor; and

(iii) no entity that pursuant to such plan or thereafter makes a loan to such a debtor or trust or to such a successor or transferee shall, by reason of making the loan, be liable with respect to any claim or demand made against such entity, nor shall any pledge of assets made in connection with such a loan be upset or impaired for that reason.

11 U.S.C. § 524(g)(3)(A).

<u>Armstrong World Industries</u>, 348 B.R. at 153. Moreover, since Plaintiffs seek recovery from funds that have been paid by the trusts for claims made by Shrader on behalf of its clients, the funds at issue have passed from the trusts and out of the jurisdiction of the courts that issued § 524(g) injunctions. Shrader has not cited any authority holding either that a channeling injunction or the jurisdiction of a court issuing such an injunction follows funds paid by a trust to a claimant's attorney. Because the funds from which Plaintiffs seek recovery are funds that have passed out of an asbestos trust in payment of claims made against the trust, the court concludes that the claims asserted in this action are not subject to dismissal either because they implicate recoveries from asbestos trusts that are within the exclusive jurisdiction of the courts establishing the trusts or because § 524(g) deprives the court of jurisdiction. Accordingly, Shrader's Motion to Dismiss for lack of subject matter jurisdiction will be denied.

**B.  Motion to Dismiss for Failure to State a Claim**

Shrader argues that the court should dismiss the Plaintiffs' claims under Rule 12(b)(6) or, alternatively, order a more definite statement under Rule 12(e) because Plaintiffs' complaint is an impermissible "shotgun" pleading that violates Rule 10(b), and because none of the claims asserted in Plaintiffs' Amended Complaint state viable causes of action.

1. <u>Standard of Review</u>

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. <u>Id.</u> To defeat a motion to dismiss pursuant to Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1966).

2. <u>Analysis</u>

      (a) Plaintiffs' Amended Complaint Is Not Subject to Dismissal for Impermissible "Shotgun Pleading"

Shrader argues that the court should dismiss the Plaintiffs' complaint under Rule 12(b)(6) or, alternatively, order a more definite statement under Rule 12(e) because it is an impermissible "shotgun pleading" that violates Rule 10(b). Rule 10(b) states that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Courts grant motions for a more definite statement under Rule 12(e) when the challenged pleading "is so vague or ambiguous that the [moving] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Citing <u>JPMorgan Chase Bank, N.A. v. Hayhurst Mortgage, Inc.</u>, No. 10-21501-CIV, 2010 WL 2949573, at *2 (S.D. Fla. July 26, 2010), Shrader argues that Plaintiffs' Amended Complaint is a "shotgun pleading" that violates Rule 10(b) because the Plaintiffs

> make no effort to differentiate between which *particular Insurer* asserts a *particular type of claim* against Shrader based on which *particular Matched Claimant's recoveries*. To the contrary, the [plaintiffs] impermissibly group together claims by three unrelated Insurers premised on unrelated transactions: fifteen non-parties' purported breaches of unidentified reimbursement provisions in separate ERISA, Medicare Advantage, or FEHBA plans.[25]

Shrader also argues that the Plaintiffs

> fail to identify any of the Matched Claimants or the type of plan under which they were insured. Instead, the

---

[25]Defendant's Memorandum, Docket Entry No. 64, p. 23.

Insurers nebulously contend that they assert ERISA claims based on "[e]ach Matched Claimant that received benefits under an ERISA Plan" or MSP Act claims based on "Matched Claimants [that] received health benefits under Medicare Advantage Plans.". . . Without allegations specifying the type of plan associated with each Matched Claimant, it is impossible for Shrader to determine which claims the Insurers are asserting based on which Matched Claimant.[26]

Shrader argues that Plaintiffs' complaint "violates Rule 10(b) because it combines in the same counts claims that, for the reasons discussed [above], arise out of multiple distinct transactions or occurrences."[27]  Citing <u>Center for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of Louisiana</u>, No. 11-806, 2013 WL 5519320, at * 1 (E.D. La. September 30, 2013), Shrader asserts that "[o]ther courts have dismissed complaints with similar deficiencies or ordered more definite statements."[28]

Plaintiffs respond that their Amended Complaint does not violate Rule 10(b) because they

have alleged that each of them provided medical benefits to the Matched Claimants under a plan that provides a right of reimbursement and alleged that the MA plans have a private right of action pursuant to the MSP Act. Moreover, the Health Plans have continuously represented to this Court and Shrader that upon entry of a protective order, they will produce detailed information proving these allegations.[29]

Asserting that Shrader is well aware that producing Matched Claimants' confidential information about their identities, the

---

[26]<u>Id.</u> at 24.

[27]<u>Id.</u>

[28]<u>Id.</u>

[29]Plaintiffs' Response, Docket Entry No. 68, p. 21.

type of health benefit plan under which they received benefits, and the type of benefits they received would violate the Health Insurance Portability and Accountability Act ("HIPAA"), Publ. L. No. 104-191, §§ 261-264, 110 Stat. 1936 (1996) (codified primarily in Titles 18, 26, and 42 of the United States Code), and that Shrader refused to agree to a protective order, Plaintiffs argue that

> Shrader is able to claim that the Health Plans' complaint is a shotgun pleading only because it refuses to sign a protective order that would all[ow] the Health Plans to produce information eviscerating that claim[].[30]

Shrader replies that no protective order is needed for the Insurers to address the deficiencies that render the amended complaint a shotgun pleading, and that the Plaintiffs fail to explain why they are unable to state each claim founded on a separate transaction or occurrence (i.e., on each health benefits plan) in a separate count, as Rule 10(b) requires.[31]

The court does not find Plaintiffs' Amended Complaint to constitute an instance of "shotgun pleading." While Shrader cites a case from the Southern District of Florida that labeled a complaint regarding multiple loans structurally similar to Plaintiffs' Amended Complaint as a form of shotgun pleading and ordered the plaintiff to file an amended complaint that identified the underlying transaction for each count, that decision does not

---

[30]Id. at 22.

[31]Defendant's Reply, Docket Entry No. 69, p. 11.

bind this court. See JPMorgan Chase Bank, 2010 WL 2949573, at
*2-3. Moreover, the court is not persuaded that decision supports
Shrader's motion. In JPMorgan Chase Bank the court said that
"shotgun pleading" occurs when a complaint "'fails to articulate
claims with sufficient clarity to allow the defendant to frame a
responsive pleading,'" id. at *2, or when "'it is virtually
impossible to know which allegations of fact are intended to
support which claims(s) for relief.'" Id. (quoting Anderson v.
District Board Of Trustees of Central Florida Community College, 77
F.3d 364, 366 (11th Cir. 1996)). Plaintiffs' Amended Complaint
clearly presents the facts and allegations as related to Shrader's
actions and then provides a short and plain statement of the
Plaintiffs' entitlement to relief. Shrader takes issue with the
particularity of the Plaintiffs' factual allegations, but fails to
argue either that factual particularity is required to allege the
claims asserted in this action, or that Plaintiffs have failed to
articulate their claims with sufficient clarity for Shrader to
frame a responsive pleading. See Mitchell v. E-Z Way Towers, Inc.,
269 F.2d 126, 131-32 (5th Cir. 1959) (Rule 12(e) requires a more
definite statement when the pleading is so vague or unintelligible
that the defendant cannot adequately plead in response).

Under Rule 8(a) a complaint will be deemed inadequate only if
it (1) fails to plead "enough facts to state a claim to relief that
is plausible on its face," Twombly, 127 S. Ct. at 1974; or
(2) fails to plead "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Rule 8 does not require particularity or specificity that can be discovered. Bates v. Laminack, 938 F. Supp. 2d 649, 666 (S.D. Tex. 2013) (citing Mitchell, 269 F.2d at 132). Because Plaintiffs have represented to this court that upon entry of a protective order they will produce details that Shrader argues are missing from their complaint[32] and because on July 27, 2017, the court entered a Temporary Protective Order (Docket Entry No. 81), Shrader's Motion to Dismiss Plaintiffs' complaint as a "shotgun pleading" and Shrader's motion for more definite statement will be denied.

> (b) Count I for ERISA Violations Is Not Subject to Dismissal for Failure to State a Claim

Shrader argues that Count I is subject to dismissal under Rule 12(b)(6) because Plaintiffs fail to plead facts sufficient to state an ERISA claim, Plaintiffs' claims for equitable restitution under ERISA fail as a matter of law, and § 524(g) of the Bankruptcy Code forecloses all of Plaintiffs' claims. For the reasons stated in § II.A., above, the court has already concluded that § 524(g) of the Bankruptcy Code does not deprive the court of jurisdiction over the claims asserted in this action. For the reasons stated below, the court concludes that Shrader's Motion to Dismiss the Plaintiffs' ERISA claims under Rule 12(b)(6) will be denied.

---

[32]Plaintiffs' Response, Docket Entry No. 68, p. 21.

## (1) Plaintiffs' Pleadings Are Factually Sufficient

Count I of Plaintiffs' Amended Complaint asserts claims pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3),

> to enjoin one or more acts and/or practices that violate the terms of the ERISA Plans and to obtain appropriate equitable relief, including, but not limited to, a constructive trust and an injunction to enforce ERISA's reimbursement provisions, and to redress certain violations of ERISA. Shrader is also liable to the Health Plans for equitable restitution in an amount equal to the monies expended by the Health Plans under ERISA Plans to treat the Matched Claimants' Asbestos Injuries.[33]

Shrader argues that Plaintiffs' ERISA claims are subject to dismissal because the Plaintiffs' "allegations do not sufficiently establish the existence of the ERISA plans under which they sue or the plan terms they seek to enforce,"[34] and do not allege that "they are fiduciaries of the ERISA plans at issue; unless they are plan fiduciaries, the [plaintiffs] have no standing to assert their ERISA claims."[35] Shrader argues that the Plaintiffs' "complaint contains no allegations identifying each ERISA plan under which they sue, the plan fiduciary, the beneficiaries of those plans, the intended benefits, the source of financing, the procedures for receiving benefits, or the particular provision of each ERISA plan [that they] seek to enforce."[36]

---

[33]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 27 ¶ 68.

[34]Defendant's Memorandum, Docket Entry No. 64, p. 26.

[35]Id. at n.7.

[36]Id.

Plaintiffs respond that they have

> pled the existence of ERISA plans over which, as
> administrators, they are fiduciaries. They also pled the
> terms they seek to enforce: the notice and reimbursement
> provisions. The Health Plans have made clear that upon
> entry of a protective order, they will produce the ERISA
> plan language specific to each Matched Claimant. The
> sole reason the Health Plans have not produced copies of
> the underlying ERISA plans, and thus the information
> Shrader complains is missing, is because of Shrader's
> refusal to enter into a protective order.[37]

Shrader responds that "a protective order is not necessary for
the [plaintiffs] to properly plead their status as ERISA
fiduciaries, the existence of the ERISA plans over which they sue,
and the plan terms they seek to enforce."[38] Citing Humana Health
Plan, Inc. v. Nguyen, 785 F.3d 1023 (5th Cir. 2015), Shrader argues
that the Plaintiffs "do not — and likely cannot — allege that they
are fiduciaries of any of the health benefit plans at issue."[39]
Shrader argues that the Plaintiffs

> have failed to describe any relationship they actually
> have with an ERISA plan that qualifies them as plan
> fiduciaries within the meaning of ERISA's civil
> enforcement mechanism, Section 502(a)(3). According to
> their public filings, Aetna Inc. and Humana, Inc., for
> example, are holding companies that operate through
> subsidiary entities.[40]

---

[37]Plaintiffs' Response, Docket Entry No. 68, p. 22.

[38]Defendant's Reply, Docket Entry No. 69, p. 14.

[39]Id.

[40]Id. at 14-15 (citing the companies' 2016 10K filings
available on the internet).

Plaintiffs allege that "[t]he Health Plans all administer health benefit plans governed by ERISA ("ERISA Plans"),"[41] that

> [e]ach Matched Claimant that received benefits under an ERISA Plan for treatment of his Asbestos Injuries was, at the time of treatment, a "participant" in an ERISA Plan, as defined in § 3(7) of ERISA, 29 U.S.C. § 1002(7); . . . each Matched Claimant was a "beneficiary" of an ERISA Plan, as defined in § 3(8) of ERISA, 29 U.S.C. § 1002(8).[42]

Plaintiffs allege that "[u]nder ERISA Plans, the Health Plans have paid medical expenses on behalf of Matched Claimants related to treatment of Asbestos Injuries,"[43] and that

> [a]ll health benefit plans offered or administered by the Health Plans provide the Health Plans a contractual right to reimbursement equal to the total amount paid by them for treatment of their Plan Members', including Matched Claimants', Asbestos Injuries. To protect those rights, all of the health benefit plans require Plan Members to notify the Health Plans when they initiate or settle Asbestos Claims against Tortfeasors for Asbestos Injuries the Health Plans paid to treat ("Claim Notification").[44]

These allegations are factually sufficient to allege the existence of ERISA plans and plan terms that the Plaintiffs seek to enforce.

---

[41]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 25 ¶ 64. See also id. at 5 ¶ 10 ("The Health Plans are all insurers or claims administrators for 'employee welfare benefit plans' under ERISA.").

[42]Id. See also id. at 5 ¶ 10 ("The Health Plans provide or have provided benefits to Plan Members, including Matched Claimants, under these plans to treat Asbestos Injuries.").

[43]Id. at 26 ¶ 65. See also id. at 5 ¶ 10.

[44]Id. at 7 ¶ 22. See also id. at 26 ¶ 66 ("pursuant to the ERISA Plans' reimbursement provisions, the Health Plans have an equitable lien and/or are entitled to a constructive trust over that portion of each Asbestos Recovery equal to the amount paid by the Health Plans on behalf of the Matched Claimant to treat his Asbestos Injuries").

Although the Plaintiffs' Amended Complaint does not contain the word "fiduciary," their allegations that "[t]he Health Plans all administer health benefit plans governed by ERISA,"[45] sufficiently alleges that they are fiduciaries of the ERISA Plans because an ERISA fiduciary "must be someone acting in the capacity of manager [or] administrator." Nguyen, 785 F.3d at 1026 (quoting Pegram v. Herdrich, 120 S. Ct. 2143, 2151 (2000)). Determination of ERISA fiduciary status is a fact intensive inquiry as evidenced by the Nguyen case cited by Shrader, which involved motions for summary judgment not a motion to dismiss. Id.

### (2) Plaintiffs ERISA Claims for Equitable Restitution Do Not Fail as a Matter of Law

Citing Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan, 136 S. Ct. 651 (2016), Shrader argues that Plaintiffs' ERISA claims for equitable restitution "in an amount equal to the monies expended . . . under ERISA Plans" as alleged in ¶ 68 of Plaintiffs' Amended Complaint fails as a matter of law.[46] Montanile arose from a series of cases interpreting the phrase "appropriate equitable relief" in ERISA § 502(a)(3). In

---

[45]Id. at 25 ¶ 64. See also id. at 5 ¶ 10 ("The Health Plans are all insurers or claims administrators for "employee welfare benefit plans" under ERISA."). Although Shrader takes issue with Plaintiffs' allegation that they are all "insurers or claims administrators," it is clear from the complaint as a whole that Plaintiffs' ERISA claims are limited to recovery for violations of plans for which they served as administrators.

[46]Defendants' Memorandum, Docket Entry No. 64, pp. 28-30.

each case the Court explained that whether a remedy is available under § 502(a)(3) depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought; both must be equitable to proceed under § 502(a)(3). <u>Montanile</u>, 136 S. Ct. at 657. The Court held that a remedy is properly regarded as equitable only if the plaintiff seeks return of "specifically identified funds that remain in the defendant's possession or . . . traceable items that the defendant purchased with the funds (e.g., identifiable property like a car)." <u>Id.</u> at 658. Because the lower courts had not determined whether the settlement funds at issue had been dissipated or commingled with the defendant's general assets, the Court remanded to permit the district court to make those determinations. Shrader argues that the Plaintiffs' claims for equitable restitution "in an amount equal to the monies expended . . . under ERISA Plans"[47] falls under this line of reasoning because those allegations fail to identify specific funds or a specific thing in Shrader's possession to which an equitable lien could attach.

Plaintiffs "agree that they may not be able to recover on their ERISA claims under *Montanile* unless Shrader currently holds identifiable funds rightly belonging to them."[48] Citing ¶ 47 of their Amended Complaint, Plaintiffs argue that "*Montanile* provides

---

[47]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 27 ¶ 68.

[48]Plaintiffs' Response, Docket Entry No. 68, p. 23.

no basis for dismissing [their] ERISA claims, because they have alleged, based upon information and belief, that Shrader does hold such funds."[49]  In ¶ 47 Plaintiffs allege:

> Upon information and belief, Shrader currently possesses and controls . . . specific Asbestos Recoveries that in good conscience belong to the Health Plans — namely, that portion of each Matched Claimant's Asbestos Recoveries that must be set aside and preserved for the benefit of the Health Plans.  Shrader . . . must not be allowed to continue to disburse these Asbestos Recoveries without first accounting for the Health Plans' reimbursement rights.[50]

These allegations are sufficient to state an ERISA claim for equitable relief because they show that the Plaintiffs are seeking specifically identifiable funds, i.e., funds from specific asbestos recoveries, alleged to be in Shrader's possession and control. See ACS Recovery Services, Inc. v. Griffin, 723 F.3d 518, 526-27 (5th Cir. 2013) (recognizing that constructive trusts have been imposed to enforce a plan's equitable lien by agreement on settlement proceeds held by a beneficiary's tort lawyer and that the most important consideration is that the settlement proceeds are still intact, and thus constitute an identifiable res to which an equitable lien can attach).

> (c)  Count II for Medicare Secondary Payer Violations Is Not Subject to Dismissal

Part C of the Medicare Act allows Medicare enrollees to obtain Medicare benefits through private insurers called Medicare

---

[49]Id. at 24.

[50]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 20 ¶ 47.

Advantage Organizations ("MAOs") operating Medicare Advantage Plans ("MAPs") instead of obtaining those benefits directly from the government. 42 U.S.C. § 1395w-21(a). Part C provides that the Center for Medicare and Medicaid Services ("CMS") "pays an MAO a fixed amount for each enrollee, per capita (a "capitation"), and "[t]he MAO then administers Medicare benefits for those enrollees and assumes the risk associated with insuring them." <u>In re Avandia Marketing, Sales Practices and Products Liability Litigation</u>, 685 F.3d 353, 357-58 (3d Cir. 2012). Count II of Plaintiffs' Amended Complaint asserts claims on behalf of plaintiff MAOs pursuant to the Medicare Secondary Payer ("MSP") provisions of the Medicare Act, 42 U.S.C. § 1395y <u>et seq.</u>, and regulations promulgated thereto by CMS alleging that

> Shrader is required to reimburse the Health Plans for outstanding conditional Medicare payments (plus interest) out of Asbestos Recoveries up to the amount of all payments made on behalf of Matched Claimants under Medicare Advantage Plans. Shrader, however, has refused and continues to refuse to reimburse the Health Plans from the Asbestos Recoveries. Therefore, Shrader, itself, is liable to the Health Plans.[51]

Shrader argues that Count II is subject to dismissal for failure to state a claim under the MSP provisions because those provisions do not provide Plaintiffs a private right of action under the circumstances of this case, and because § 524(g) of the Bankruptcy Code independently forecloses Plaintiffs' MSP claims.

---

[51]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 28 ¶ 76.

For the reasons stated in § II.A, above, the court has already concluded that § 524(g) of the Bankruptcy Code does not deprive the court of jurisdiction over the claims asserted in this action. For the reasons stated below, Shrader's Motion to Dismiss the Plaintiffs' MSP claims will be denied.

### (1) Applicable Law

The MSP provisions of the Medicare Act, 42 U.S.C. §§ 1395y, et seq., make Medicare insurance secondary to any "primary plan" obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor. The MSP prohibits Medicare from paying medical expenses when payment has been made or can reasonably be expected to be made by a primary plan. In pertinent part the statute states:

### (2) Medicare secondary payer

#### (A) In general

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that--

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a group
health plan or large group health plan, to the extent
that clause (i) applies, and a workmen's compensation law
or plan, an automobile or liability insurance policy or
plan (including a self-insured plan) or no fault
insurance, to the extent that clause (ii) applies. An
entity that engages in a business, trade, or profession
shall be deemed to have a self-insured plan if it carries
its own risk (whether by a failure to obtain insurance,
or otherwise) in whole or in part.

42 U.S.C. § 1395y(b)(2)(A). <u>See also</u> <u>Thompson v. Goetzmann</u>, 337
F.3d 489, 496 (5th Cir. 2003) ("Medicare serves as a back-up
insurance plan to cover that which is not paid for by a primary
insurance plan."). The only exception to the prohibition in
§ 1395y(b)(2)(A) is if a primary plan "has not made or cannot
reasonably be expected to make payment," then Medicare can make a
conditional payment. Since Medicare remains the secondary payer,
the primary plan must reimburse Medicare for the conditional
payment. In pertinent part the statute states:

**(2)  Medicare secondary payer**

. . .

**(B)  Conditional payment**

**(i)  Authority to make conditional payment**

The Secretary may make payment under this
subchapter with respect to an item or service
if a primary plan described in subparagraph
(A)(ii) has not made or cannot reasonably be
expected to make payment with respect to such
item or service promptly (as determined in
accordance with regulations). Any such payment
by the Secretary shall be conditioned on
reimbursement to the appropriate Trust Fund in
accordance with the succeeding provisions of
this subsection.

> **(ii) Repayment required**
>
> Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. . . .

42 U.S.C. § 1395y(b)(2)(B)(i)-(ii).

The MSP provisions provide a private cause of action for damages in an amount double the amount otherwise available when a primary plan fails to provide for primary payment or appropriate reimbursement. In pertinent part the statute states:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A).

There are three elements to an MSP private cause of action: (1) a primary plan, (2) that is responsible to pay for an item or service, and (3) that failed to make the appropriate payment to Medicare for the item or service. See Glover v. Philip Morris USA, 380 F. Supp. 2d 1279, 1290 (M.D. Fla. 2005), aff'd sub nom. Glover

v. Liggett Group, Inc., 459 F.3d 1304 (11th Cir. 2006); O'Connor v. Mayor and City Council of Baltimore, 494 F. Supp. 2d 372, 374 (D. Md. 2007).

### (2) Application of the Law to the Allegations

Shrader argues that the MSP provisions do not provide Plaintiffs with a private right of action because (1) the asbestos trusts whose disbursements the Plaintiffs' seek to recoup are not "primary plans" as defined by 42 U.S.C. § 1395y(b)(2)(A), (2) Plaintiffs have failed to allege facts capable of establishing that a "primary plan" failed to make a payment required by the MSP provisions, and (3) construing the MSP provisions to afford Plaintiffs a private right of action would render Medicare Part C's secondary-payer provision superfluous.[52] Plaintiffs respond that the MSP provisions and regulations expressly allow Medicare, and by extension MAOs, to recover primary plan payments held by any third party, and that they have alleged facts capable of establishing their MSP claims.[53]

### (i) Plaintiffs Have Sufficiently Alleged that Asbestos Trusts Are "Primary Plans"

Shrader argues that the asbestos trusts are not "primary plans" as defined by the MSP provisions because they are neither a

---

[52]Defendant's Memorandum, Docket Entry No. 64, pp. 31-40.

[53]Plaintiffs' Response, Docket Entry No. 68, pp. 24-31.

"liability insurance policy" nor "[a]n entity that engages in a business, trade, or profession,"[54] but are instead

> judicial creation[s] of the Bankruptcy Code that pay[] claims on the terms specified in a bankruptcy reorganization or liquidation plan. Accordingly, even if the tortfeasors that caused the Matched Claimants' asbestos injuries or their liability insurers were primary plans, the § 524(g) trusts created in connection with the tortfeasors' applications for bankruptcy protection are not. Accordingly, payments from those trusts cannot support liability under the MSP Act.[55]

Shrader argues that the MSP's definition of "primary plan" "does not include a fund or settlement proceeds, whether derived from a tort action or a bankruptcy claim."[56] The MSP provisions state that

> the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

42 U.S.C. § 1395y(b)(2)(A).

Citing _Collins v. Wellcare Healthcare Plans, Inc._, 73 F. Supp. 3d 653, 666-68 (E.D. La. 2014), and _United States v. Stricker_, Civil No. 09-BE-2423-E, 2010 WL 6599489, at *5 (N.D. Ala. September 30, 2010), Plaintiffs respond that "Asbestos Recoveries that are in Shrader's possession are 'primary plans' within the

---

[54]Defendant's Memorandum, Docket Entry No. 64, pp. 32-33.

[55]_Id._ at 33.

[56]Defendant's Reply, Docket Entry No. 69, p. 18.

meaning of the Secondary Payer Act."[57]  Citing 42 C.F.R. § 411.21.

Plaintiffs argue that

> even if Shrader is correct that Asbestos Trusts fall
> outside of the statutory and regulatory definition of
> "primary plan," the entities that funded Asbestos Trusts
> — all bankrupt, self-insured plans or their liability
> insurers — comfortably fall within that definition.
> These primary plans have in turn funded the Asbestos
> Trusts, whose sole purpose is to serve as "primary
> payers" making "primary payments" within the meaning of
> the Secondary Payer Act's regulations.[58]

In <u>Stricker</u>, 2010 WL 6599489, the government sued to recoup
payments stemming from a massive class action settlement against
chemical companies that resulted in payments of some $300 million
to injured plaintiffs, some of whom were alleged to be Medicare
beneficiaries.  Because the class action involved thousands of
plaintiffs, the government named only the plaintiffs' attorney and
the chemical companies as defendants when it brought its MSP
action.  <u>Id.</u> at *2-*3.  Since the issue in dispute was limitations,
<u>Stricker</u> is inapposite to the meaning of "primary plan" because the
court assumed for the purpose of analyzing the limitation issue
that all the corporate defendants qualified as "primary plans"
under the statutory definition and that all attorney defendants
were entities that received payment from a primary plan or from the
proceeds of a primary plan.  <u>Id.</u> at *5.

In <u>Collins</u>, 73 F. Supp. 3d at 653, an insured sought a
declaration that her MAO health insurer was not entitled to

---

[57]Plaintiffs' Response, Docket Entry No. 68, p. 26.

[58]<u>Id.</u> at 26-27.

repayment for claims paid as a result of an automobile accident from a tort settlement with the automobile insurer. When the insurer moved for dismissal of the insured's claim and for summary judgment on its counterclaim for repayment, the court held that the insured's tort settlement constituted a "primary plan" under the MSP provisions. Id. at 666-68. In reaching this holding the court recognized that Congress amended the MSP provisions in 2003 to include tortfeasors and their insurance carriers in the primary plan definition, and that the amendments were a response to several decisions that holding that a tortfeasor and his insurance carrier did not qualify as a primary plan. Id. at 666 (citing Bio-Medical Applications of Tennessee, Inc. v. Central States Southeast and Southwest Areas Health and Welfare Fund, 656 F.3d 277, 289-90 (6th Cir. 2011) (describing events that led to the amendments), and Brown v. Thompson, 374 F.3d 253 (4th Cir. 2004) (holding that a tort settlement constitutes a primary plan under the 2003 amendments)).

In Bio-Medical the Sixth Circuit described the events that led to the 2003 MSP amendments:

> In a series of cases in the early 2000s, Medicare asserted claims against the settlements that arose from individual and mass-tort cases involving tobacco companies, drug manufacturers, and breast-implant manufacturers. See Mason v. American Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) (citing these cases). Essentially, Medicare had paid for some of the plaintiffs' medical expenses, so once the plaintiffs recovered their damages (which included medical expenses) from the tortfeasors, Medicare sought reimbursement.

Medicare brought these lawsuits under the Medicare Secondary Payer Act by relying on an ambiguity in the Act's definition of a "primary plan." See, e.g., Thompson v. Goetzmann, 337 F.3d 489, 493-95 (5th Cir. 2003). The Act defined a "primary plan" to include a "self-insured plan," but at the time the Act gave no guidance as to what constituted a self-insured plan. See 42 U.S.C. § 1395y(b)(2)(A) (2001), amended by Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 301, 117 Stat. 2066, 2221-22 (2003). Attempting to capitalize on this ambiguity, Medicare argued that the tortfeasors were "self-insured plans" because rather than purchasing liability coverage from a separate insurance carrier, the tortfeasors chose to carry their own risk of liability. See Goetzmann, 337 F.3d at 495. The federal courts, however, rejected this argument. See, e.g., Mason, 346 F.3d at 42 ("[C]ourts have rejected all efforts to apply [the Act's] heavy remedy and double damages to the context of tort litigation."); Goetzmann, 337 F.3d at 496-501. Similarly, when inventive private plaintiffs filed a lawsuit against tobacco companies for their medical expenses on the same theory under the Act's private cause of action, the Second Circuit rejected it for the same reason: tortfeasors simply were not "self-insured plans." See Mason, 346 F.3d at 38-43. The Second Circuit concluded its opinion, in October 2003, with an unmistakable invitation to Congress: "Future amendments will be required for the statute to extend to the defendants in this action." Id. at 43.

Congress accepted the invitation only two months later. In December 2003, as part of the Medicare Modernization Act (which was best known for adding a prescription drug benefit for Medicare beneficiaries), Congress amended the Medicare Secondary Payer Act to accommodate Medicare's failed litigation position. For our purposes, Congress made two important changes. First, Congress expressly defined a "self-insured plan" as "[a]n entity that engages in a business, trade, or profession . . . if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub.L. No. 108-173, § 301(b)(1), 117 Stat. at 2221-22 *290 (codified as amended at 42 U.S.C. § 1395y(b)(2)(A)). This amendment reflected Congress's clear intention to make tortfeasors liable under the Act. Although when stripped from its

context, this new statutory definition seems an odd way to create tortfeasor liability, it makes perfect sense against the legislative backdrop: Medicare's insistence in court that tortfeasors were "self-insured plans." Indeed, the statutory definition of a "self-insured plan" mirrored the definition in a pre-existing federal regulation, to which the Fifth Circuit refused to give <u>Chevron</u> deference (despite Medicare's protestations) in <u>Goetzmann</u>, 337 F.3d at 498 & n. 25, 501-02. Moreover, the limited legislative history makes clear that Congress sought specifically to abrogate those cases, like <u>Goetzmann</u>, that narrowly defined "self-insured plan" and, thus, prevented tortfeasor liability under the Act; the legislative history even mentions <u>Goetzmann</u> by name. <u>See</u> H.R.Rep. No. 108-178, pt. 2 at 189-90 (2003) (stating that the amendment sought to address "[r]ecent court decisions such as <u>Thompson v. Goetzmann</u>" that allowed "firms that self-insure for product liability . . . to avoid paying Medicare for past medical payments related to the claim").

<u>Bio-Med. Applications of Tennessee</u>, 656 F.3d at 289-90 (citing

<u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>,

104 S. Ct. 2778 (1984)).

<u>Brown</u>, 374 F.3d at 253, involved a suit by the government seeking reimbursement from a tort settlement. Although the statutory language providing for suits brought by the government differs from that providing for suits brought by Medicare entities, (comparing 42 U.S.C. § 1395y(b)(2)(B)(iii) with 42 U.S.C. § 1395y(b)(3)(A), the Fourth Circuit did not rely on the government-specific provision when it held that the government had a right to reimbursement from settlement funds under the MSP. Focusing instead on whether the settlement was funded by a primary plan, the court found that "the uncontroverted record evidence demonstrates that Kaiser *did* have what [the 2003 amendments]

clarifie[d] will suffice to constitute a self-insured 'primary plan'—an *ex ante* arrangement to pay for liability claims." Brown, 374 F.3d at 262. In reaching this conclusion the court observed that with the 2003 amendments, Congress "plainly indicated that the term 'self-insured plan' should be given a relatively broad definition, unrestricted by formalistic requirements." Id. The Fourth Circuit relied not only on the definition of a primary plan, but also on evidence presented at the summary judgment stage to find that the tort settlement had been funded by a primary plan.

Finding the reasoning in Collins, 73 F. Supp. 3d at 666-68, and Brown, 374 F.3d at 262, persuasive, the court concludes that pursuant to the 2003 amendments to the MSP provisions, asbestos trusts can constitute primary plans under the MSP, and the settlements paid by asbestos trusts to Shrader on behalf of Shrader's clients can be a source of reimbursement under the MSP. Accordingly, Plaintiffs' MSP claims against Shrader are not subject to dismissal because asbestos trusts are not "primary plans" as defined by the MSP provisions.

(ii)  Plaintiffs Have Alleged Facts Capable of
      Establishing that a "Primary Plan"
      Failed to Make a Required Payment

Shrader argues that Plaintiffs have failed to allege facts capable of establishing that a "primary plan" failed to make a required payment because the MSP provisions require Plaintiffs to satisfy both conditions outlined in §§ 1395y(b)(1) and (b)(2)(A) in

order to bring a private cause of action. 42 U.S.C. § 1395y(b)(3)(A) (stating that "[t]here is established a private cause of action . . . in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) *and* (2)(A))" (emphasis added). Arguing that the "and" in § 1395y(b)(3)(A) is conjunctive, Shrader argues that Plaintiffs' complaint should be dismissed because Plaintiffs have failed to allege facts capable of establishing that Shrader's actions violate both paragraphs (b)(1) and (b)(2)(A).[59] Paragraph (1) describes group health plans, and paragraph (2)(A) provides that Medicare organizations serve as secondary payers when they make conditional payments, as outlined in 42 U.S.C. § 1395y(b)(2)(B).

Citing Michigan Spine and Brain Surgeons, PLLC v. State Farm Mutual Auto Insurance Co., 758 F.3d 787, 790-91 (6th Cir. 2014), Shrader argues that Plaintiffs have failed to allege facts capable of establishing that it did not make a payment in accordance with paragraph (b)(1) governing group health plans because Plaintiffs have not alleged that the asbestos trusts from which the Matched Claimants received settlement funds are group health plans.[60] Shrader's reliance on Michigan Spine is misplaced because in that case the Sixth Circuit rejected a similar argument and held instead

---

[59]Defendant's Memorandum, Docket Entry No. 64, pp. 33-37.

[60]Id. at 33-35.

-40-

that § (b)(1) applies only to group health plans, but that the private cause of action provided by § 1395y(b)(3)(A) is not limited to actions against group health plans. <u>Id.</u> at 793. The court explained that limiting the MSP's private cause of action to group health plans "would eviscerate the private cause of action as it relates to non-group health plans." <u>Id.</u> <u>See also</u> <u>Collins</u>, 73 F. Supp. 3d at 668 (rejecting the same argument made by Plaintiffs here and recognizing that other circuits have not limited the private cause of action to claims against group health plans).

Shrader argues that Plaintiffs have failed to allege facts capable of establishing that it did not make a payment in accordance with paragraph (b)(2)(A) because Plaintiffs

> do *not* allege that the[] purported primary plans' refusal to pay has caused the Secretary to make conditional payments (which the primary plan would then be obligated to reimburse). To the contrary, the [plaintiffs] allege that some of the Matched Claimants were insured under [MAPs] — plans for which the Secretary *never* makes conditional payments, as all payments under such plans are made by private insurers like the plaintiffs in this case. . . .[61]

Section 1395y(2)(B)(i) provides that a Medicare organization can make a conditional payment "if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations)." 42 U.S.C. § 1395y(2)(B)(i). The regulations state that "conditional payment means a Medicare payment for services for

_____

[61]<u>Id.</u> at 36-37.

which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that coverage existed." 42 C.F.R. § 411.21. Nothing in the statute or the regulations supports Shrader's argument that a private cause of action can only be brought if a primary plan's refusal to pay caused or induced a Medicare entity to make conditional payments or if a conditional payment is made by the Secretary and not by an MAO. Shrader has not cited any case law in support of this argument, and the Third Circuit has rejected similar arguments. See In re Avandia, 685 F.3d at 359-60 (concluding that the MSP scheme of § 1395y(b)(2)(A) is not limited to government-administered Medicare plans). Accordingly, the court is not persuaded that Plaintiffs have failed to allege facts capable of establishing that a "primary plan" failed to make a required payment in accordance with the requirements of the MSP provisions. Plaintiffs have alleged that (1) their MAOs paid medical expenses to treat asbestos-related injuries of Matched Claimants, (2) the MAOs had no reason to believe that a primary payment would be forthcoming when they paid those medical expenses, (3) the Matched Claimants made claims through the tort system and to asbestos trusts that were resolved and paid to Shrader upon proof of certain asbestos-related diagnoses and in exchange for signed releases, (4) Shrader has refused to reimburse the MAOs from the asbestos recoveries, and (5) on information and belief those funds are currently in

Shrader's possession and rightly belong to the MAOs.[62]  The court
concludes that the Plaintiffs have sufficiently alleged that a
"primary plan" failed to make a required payment.

> (iii) <u>Plaintiffs Have a Private Right of
> Action</u>

Shrader argues that construing the MSP provisions to afford
Plaintiffs a private right of action would render Medicare Part C's
secondary-payer provision superfluous because the reimbursement
rights of MAOs are specifically governed by Part C of the Medicare
Act, which includes a secondary-payer provision that expressly
delimits the conditions and scope of any claim.[63]  <u>See</u> 42 U.S.C.
§ 1395w-22(a)(4).  Citing <u>Parra v. PacifiCare of Arizona, Inc.</u>, 715
F.3d 1146, 1154 (9th Cir. 2013), Shrader argues that "[f]ederal
courts have been clear that the Part C secondary payer provision
defines the circumstances under which an MAO may pursue a
reimbursement claim, requiring at a minimum a contractual clause
creating a right of reimbursement for the plan."[64]

The MAO specific statute in Part C states in pertinent part:

> Notwithstanding any other provision of law, a
> Medicare+Choice [now, "Medicare Advantage"] organization
> **may** (in the case of the provision of items and services
> to an individual under a Medicare+Choice plan under
> circumstances in which payment under this subchapter is

---

[62]Plaintiffs' Amended Complaint, Docket Entry No. 62, ¶¶ 23,
31-35, 46, 50, 70-76.

[63]Defendant's Memorandum, Docket Entry No. 64, pp. 37-40.

[64]<u>Id.</u> at 39.

made secondary pursuant to section 1395y(b)(2) of this title) **charge** or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section-

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4) (emphasis added). The court is not persuaded by Shrader's argument that construing the MSP provisions to afford Plaintiffs a private right of action would make the above-quoted language superfluous. This language from Part C, which states that MAOs "may . . . charge or authorize the provider of . . . services to charge" certain parties, is distinguishable from the language found in the MSP which provides that a "primary plan, and an entity that receives payment from a primary plan, **shall** reimburse the appropriate Trust Fund." 42 U.S.C. § 1395y(b)(2)(B). See Collins, 73 F. Supp. 3d at 664 ("This Court need not weigh in on either side of the applicability of the MAO Statute to this case because the Court finds that a cause of action exists under the MSP.").

Moreover, to the extent that Shrader is arguing that the language in Part C means that MAOs have no private right of action under the MSP provisions, that argument is not persuasive. Although the Fifth Circuit has not determined whether an MAO may avail itself of the MSP private cause of action in

§ 1395y(b)(3)(A), the circuit courts to have addressed this issue have held that this section permits an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment. See Humana Medical Plan, Inc. v. W. Heritage Insurance Co., 832 F.3d 1229, 1238 (11th Cir. 2016); Michigan Spine, 758 F.3d at 787; In re Avandia Marketing, 685 F.3d at 357-58. After these decisions district courts around the country, including in the Fifth Circuit, have reached the same conclusion. See, e.g., Collins, 73 F. Supp. 3d at 664-65; Humana Insurance Co. v. Farmers Texas County Mutual Insurance Co., 95 F. Supp. 3d 983, 986 (W.D. Tex. 2014). Accordingly, the court is not persuaded that Count II of Plaintiffs' Amended Complaint should be dismissed for failure to state a claim under the MSP provisions because those provisions do not provide Plaintiffs a private right of action under the circumstances of this case.

> (d) Count IV for Unjust Enrichment/Money Had and Received is Subject to Dismissal

Count IV of Plaintiffs' Amended Complaint asserts claims for unjust enrichment/money had and received and seeks imposition of constructive trusts. Plaintiffs allege that

> Shrader has obtained and continues to obtain property that rightfully belongs to the Health Plans under circumstances that render it wrongful and inequitable for Shrader to continue to retain it. The property includes those portions of any Asbestos Recoveries obtained on behalf of Matched Claimants that Shrader retained for itself, pursuant to an attorneys' fee agreement or otherwise, before disbursing the remaining portion to

Matched Claimants. It is that specific property over which the Health Plans seek the imposition of a constructive trust under this count.[65]

Shrader argues that Plaintiffs' claims for unjust enrichment/money had and received and imposition of constructive trusts fail as a matter of law because (1) Plaintiffs have no federal common law right to sue Shrader on an unjust enrichment theory, (2) federal law precludes unjust enrichment claims where an express contract covers the subject matter at issue, and (3) § 524(g) of the Bankruptcy Code independently forecloses recovery on this or any other theory.[66] For the reasons stated in § II.A., above, the court has already concluded that § 524(g) of the Bankruptcy Code does not deprive the court of jurisdiction over the claims asserted in this action. Shrader's Motion to Dismiss the Plaintiffs' claims for unjust enrichment/money had a received will be granted.

Plaintiffs respond that "[c]ontrary to Shrader's argument, [they] have not asserted a federal common law right to sue Shrader for unjust enrichment[, but] . . . have instead asserted state-law equity claims [for money had and received]."[67] Plaintiffs acknowledge that

_____

[65]Plaintiffs' Amended Complaint, Docket Entry No. 62, pp. 29-30 ¶ 81.

[66]Defendant's Memorandum, Docket Entry No. 64, pp. 41-44.

[67]Plaintiffs' Response, Docket Entry No. 68, p. 32.

-46-

> while Shrader is correct that state-law unjust enrichment
> claims would be foreclosed if an express contract
> governed the dispute . . ., no such contract exists. The
> Health Plans are in privity with Shrader's clients,
> not Shrader, and the Health Plans' MA claims are asserted
> under federal law, not under any contract theory.[68]

Citing <u>MGA Insurance Co. v. Charles R. Chesnutt, P.C.</u>, 358 S.W.3d 808 (Tex. App. — Dallas 2012), Plaintiffs argue that their claims for unjust enrichment/money had and received should not be dismissed because they have been adequately pleaded under Texas law.[69] The <u>Chesnutt</u> court held that "[t]o prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." <u>Id.</u> at 814 (citing <u>Edwards v. Mid-Continent Office Distribution, L.P.</u>, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied)).

Citing <u>Pharmacia Corp. Supplemental Pension Plan, ex rel. Pfizer Inc. v. Weldon</u>, 126 F. Supp. 3d 1061 (E.D. Mo. 2015), Shrader argues that Plaintiffs' clarification that their unjust enrichment/money had and received claims rely exclusively on state law shows that those claims are all subject to dismissal, and that the claims related to ERISA plans are preempted.[70] In <u>Weldon</u> the court held that ERISA preempted state law claims for money had and received asserted by an ERISA plan seeking to recoup funds paid to a beneficiary. <u>Id.</u> at 1071. Shrader argues that "[b]ecause

---

[68]<u>Id.</u>

[69]<u>Id.</u> & n.69.

[70]Defendant's Reply, Docket Entry No. 69, p. 22.

express contracts — i.e., the applicable health benefit plans — cover the subject matter of the [Plaintiffs'] unjust enrichment and money had and received claims, those claims fail as a matter of law."[71]  Quoting Conocophillips Co. v. Koopmann, 2016 WL 2967689, at *14 (Tex. App. — Corpus Christi, May 19, 2016, pet. denied), Shrader argues that the fact that Shrader is not in privity with the Plaintiffs with respect to those plans does not change the result because "[t]he rule barring unjust enrichment not only applies when a plaintiff seeks to recover from the party with whom he expressly contracted but also applies when a plaintiff seeks to recover from a third party to the contract who benefitted from its performance."[72]

### (1)  Plaintiffs' Unjust Enrichment/Money Had and Received Claims Related to ERISA Plans are Preempted

"There are two types of ERISA preemption:  complete and express preemption." Haynes v. Prudential Health Care, 313 F.3d 330, 333-37 (5th Cir. 2002) (citing ERISA § 502, 29 U.S.C. § 1132 (complete preemption), and ERISA § 514, 29 U.S.C. § 1144 (express preemption)).  Complete preemption occurs whenever Congress so completely preempts "a particular area that any civil complaint raising this select group of claims is necessarily federal in

---

[71]Id. at 21.

[72]Id.

character." _Metropolitan Life Insurance Co. v. Taylor_, 107 S. Ct. 1542, 1546 (1987)). The comprehensive civil remedies in § 502(a) of ERISA completely preempt state-law remedies. _Aetna Health Inc. v. Davila_, 124 S. Ct. 2488, 2491 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted."). ERISA's express preemption clause preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." _Shaw v. Delta Air Lines, Inc._, 103 S. Ct. 2890, 2900 (1983). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." _Ingersoll-Rand Co. v. McClendon_, 111 S. Ct. 478, 483 (1990) (quoting _Pilot Life Ins. Co. v. Dedeaux_, 107 S. Ct. 1549, 1552-53 (1987)). To determine whether ERISA preempts a state law claim, the Fifth Circuit applies a two-prong test:

> (1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.

_Mayeaux v. Louisiana Health Services and Indemnity Co._, 376 F.3d 420, 432 (5th Cir. 2004).

If Plaintiffs are plan fiduciaries, as they allege,[73] their state law claims related to ERISA plans are completely preempted by § 1132(a) because those claims would duplicate, supplement, or supplant their ERISA civil enforcement remedy. See Davila, 124 S. Ct. at 2495. If Plaintiffs are not fiduciaries, their state law claims for unjust enrichment/money had and received that relate to ERISA plans are expressly preempted by § 1132(a) because they relate to an ERISA plan. See Christopher v. Mobil Oil Corp., 950 F.2d 1220 (5th Cir.), cert. denied, 113 S. Ct. 68 (1992) (recognizing that a claim "relates to a plan" when the very essence of the claim is premised on the existence of an employee benefit plan); Franks v. Prudential Health Care Plan, Inc., 164 F. Supp. 2d 865, 874 (W.D. Tex. 2001) ("If the claims could not be made if the plan ceased to exist, they are preempted by ERISA.").

> **(2) Plaintiffs' Unjust Enrichment/Money Had and Received Claims are Subject to Dismissal Because They Arise from Express Contracts**

A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). When a valid, express contract covers the subject matter of the parties' dispute, there generally can be no recovery under a quasi-contract theory. Fortune Production Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex.

---

[73]Plaintiffs' Response, Docket Entry No. 68, p. 22.

2000). Although Plaintiffs argue that no contracts govern their claims because "[t]he Health Plans are in privity with Shrader's clients, not Shrader, and the Health Plans' MA claims are asserted under federal law, not under any contract theory,"[74] neither of these arguments negate the fact that Plaintiffs allege that their rights to reimbursements all derive from plan documents.[75] Moreover, under Texas law the rule barring claims for unjust enrichment covered by express contracts applies not only when a plaintiff seeks to recover from the party with whom he expressly contracted but also when a plaintiff seeks to recover from a third party who benefitted from the contract's performance. See Conocophillips, 2016 WL 2967689, at *14. Because the Plaintiffs' claims for unjust enrichment/money had and received all hinge on whether the plaintiffs are entitled to reimbursement under the terms of a health benefits plan, the court concludes that these claims are all subject to dismissal because express contracts cover the subject matter of these disputes. See Edwards v. Mid-Continent Office Distributors, L.P., 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) ("The doctrine of unjust enrichment applies the principles of restitution to disputes that are not governed by a contract between the parties."); Connecticut General Life Insurance

---

[74]Id. at 32.

[75]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 7 ¶ 22 ("All health benefit plans offered or administered by the Health Plans provide the Health Plans a contractual right to reimbursement equal to the total amount paid by them for treatment of their Plan Members', including Matched Claimants', Asbestos Injuries.").

<u>Co. v. Elite Center for Minimally Invasive Surgery LLC</u>, No. 4:16-CV-00571, 2017 WL 607130, at *14 (S.D. Tex. Feb. 15, 2017), <u>opinion amended and superseded in part</u>, No. 4:16-CV-00571, 2017 WL 1807681 (S.D. Tex. May 5, 2017) (same).

    (e) Counts III and V for Declaratory Judgment are Not
       Subject to Dismissal

   Counts III and V of Plaintiffs' Amended Complaint assert claims for declaratory relief pursuant to 28 U.S.C. ¶ 2201 relative to "All Medicare Plans" (Count III) and "All Health Plans" (Count V). Shrader argues that the claims asserted in these counts are subject to dismissal for failure to state a claim because the Plaintiffs seek declaratory judgment on matters subsumed within their unmeritorious claims for relief, and because Plaintiffs are not entitled to a declaration that Shrader must disclose to them the identities of Shrader's present and former clients.[76] Shrader cites <u>In re Vioxx Products Liability Litigation (Vioxx I)</u>, No. MDL 1657, 2008 WL 3285912, at *14 (E.D. La. August 7, 2008), <u>aff'd sub nom. Avmed Inc. v. BrownGreer PLC</u>, 300 F. App'x 261 (5th Cir. 2008), in which the court rejected a request from insurers for an order compelling the Vioxx settlement claims administrator to disclose the identities of claimants who were participating in the Vioxx settlement so that insurers could assert claims for reimbursement of health costs against those individuals. The court stated that "[it] can find no authority — and the Plaintiffs have

---

[76]Defendant's Memorandum, Docket Entry No. 64, pp. 44-49.

provided none — to support the contention that the Plaintiffs have a right to the claimants' identifying information, including their social security numbers, dates of birth, employers, etc."[77] Shrader argues that the conclusion in that case "has even greater force here, where the [Plaintiffs] seek to discover this same information from the asbestos claimants' attorneys, who are ethically bound to maintain the confidentiality of such information."[78]

Plaintiffs respond that they

> are not seeking to obtain the identities of all of Shrader's clients. Rather, they are initially seeking to obtain only the names and certain identifying information related to those of Shrader's clients that recovered for asbestos injuries. That information will then be used by the Health Plans to determine whether they paid to treat the asbestos related medical expenses of those individuals. Certainly Shrader is able to differentiate between those clients and its other clients that made non-asbestos claims.[79]

Acknowledging that Shrader's clients have a substantial interest in protecting the privacy of their social security numbers, Plaintiffs assert that they have requested entry of a protective order pursuant to which those interests would be protected.[80]

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may

---

[77]Id. at 48.

[78]Id.

[79]Plaintiffs' Response, Docket Entry No. 68, p. 33.

[80]Id. at 34.

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act does not create a substantive cause of action but, instead, is merely a procedural vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law. See Aetna Life Insurance Co. of Hartford, CT v. Haworth, 57 S. Ct. 461, 463 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."); Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc., 723 F.2d 1173, 1179 (5th Cir. 1984) (same).

Because for the reasons stated in the preceding sections of this Memorandum Opinion and Order, the court has already concluded that Plaintiffs have stated viable claims for equitable lien, constructive trust, and equitable restitution pursuant to ERISA and the MSP provisions of the Medicare Act, Shrader's Motion to Dismiss Plaintiffs' requests for declaratory relief will be denied.

## C. Shrader's Motion to Dismiss Under Rule 12(b)(7)

Shrader argues that this action should be dismissed under Rule 12(b)(7) because Plaintiffs failed to join required and indispensable parties over whom the court lacks personal jurisdiction, i.e., the Matched Claimants whose asbestos injury recoveries the Plaintiffs seek. Shrader argues that the Matched Claimants are required parties and that ordering their joinder is

-54-

not feasible because many of them are not subject to personal jurisdiction in Texas.[81]  Plaintiffs respond that the Matched Claimants are not required parties, but that Shrader is free to join them as joining them is feasible.[82]

1.  <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(7) allows a court to dismiss an action for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Analysis under Rule 19 is bifurcated. First, the court determines under Rule 19(a) whether "a person" is necessary, i.e., "required to be joined if feasible." Fed. R. Civ. P. 19(a).  In pertinent part Rule 19(a) states:

**(a) Persons Required to Be Joined if Feasible.**

**(1) Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

---

[81]Defendant's Memorandum, Docket Entry No. 64, pp. 16-23.

[82]Plaintiffs' Response, Docket Entry No. 68, pp. 15-21.

> > (ii) leave an existing party subject to a
> > substantial risk of incurring double,
> > multiple, or otherwise inconsistent
> > obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Second, if a person is necessary under Rule 19(a) but cannot be joined, the court must determine under Rule 19(b) whether the person is indispensable—or, in the Rule's terms, "whether, in equity and good conscience, the action should proceed among the existing parties [without the necessary person] or should be dismissed." Fed. R. Civ. P. 19(b). If litigation cannot be properly pursued without the absent party, that party is "indispensable" and the court must dismiss the litigation. Hood ex rel. Mississippi v. City of Memphis, Tennessee, 570 F.3d 625, 629 (5th Cir. 2009). If the party is not indispensable, the case may continue without joinder. While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." Id. at 628 (quoting Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1309 (5th Cir. 2006)).

## 2. Analysis

### (a) The Matched Claimants Are Required Parties

Shrader argues that the Matched Claimants are necessary parties because (1) the Matched Claimants have an interest in the subject matter of the Plaintiffs' action, i.e., the recoveries that

-56-

the Matched Claimants have obtained for their asbestos injuries, and (2) proceeding without the Matched Claimants would impair the Matched Claimants' ability to protect their interests in their asbestos recoveries and would subject Shrader to substantial risk of incurring inconsistent obligations, i.e., that the Matched Claimants would demand from Shrader the same funds that Plaintiffs are demanding.[83] Citing Wach v. Byrne, Goldenberg & Hamilton, PLLC, 910 F. Supp. 2d 162, 163 (D.D.C. 2012), Shrader argues that courts have found Rule 19(a) satisfied under similar circumstances.[84]

In Wach the plaintiff sued a law firm "asserting his right to a share of settlement proceeds obtained by [the law firm] on behalf of third parties in connection with a separate litigation." 910 F. Supp. 2d at 163. The court found that a non-party claiming entitlement to the same settlement proceeds was a required party under Rule 19(a). The court explained that, "because Plaintiff and [the absent third party] lay[ed] opposing, irreconcilable claims to the same portion of the limited settlement proceeds, resolving th[e] litigation in [the absent third party's] absence would undoubtedly 'impede [the absent third party's] ability to protect' his interest in those funds." Id. at 169. The court also found that proceeding without the absentee claimant would leave the law firm "'subject to a substantial risk of incurring double, multiple,

---

[83]Defendant's Memorandum, Docket Entry No. 64, pp. 17-18.

[84]Id. at 18.

or otherwise inconsistent obligations' regarding the disputed settlement proceeds." Id. at 171. The court explained that "there [was] nothing to prevent [the absent third party] from later suing [the law firm] to recover the disputed funds, regardless of who prevails in the instant action." Id.

Plaintiffs responded that Shrader's argument is

> based on a misunderstanding of the Health Plans' claims. Specifically, the Health Plans are not "seek[ing] to litigate the Matched Claimants' contractual obligations" or "seek[ing] funds that belong to the Matched Claimants," as alleged by Shrader. Rather, they are seeking to recover from Shrader directly under the MSP and establish a constructive trust under ERISA to preserve identifiable funds in Shrader's possession.

> . . . [T]he MA Plans are asserting claims against Shrader for its mishandling of Asbestos Recoveries. The Secondary Payer Act gives the MA Plans rights, directly against Shrader, to recover on their claims. Shrader's clients have no interest in the subject matter of those claims.

> The ERISA Plans are seeking a constructive trust over any Asbestos Recoveries that remain in Shrader's possession, custody, or control, and an injunction to prevent the further distribution of those amounts and any amounts that may come into Shrader's possession while this action is pending. Shrader possesses the res of this constructive trust, and this Court has the authority to enter an order prohibiting Shrader from dissipating those funds until the Health Plans' rights are resolved. Case law also makes clear that the ERISA plans can recover directly from Shrader.

> Shrader ignores its direct liability under the Secondary Payer Act (to the MA plans) and the Longaberger [Co. v. Kolt, 586 F.3d 459 (6th Cir. 2009)] and [ACS Recovery Services, Inc. v.] Griffin[, 723 F.3d 518, 526 (5th Cir. 2013)] line of cases (to the ERISA plans). Rather, it bases its entire argument upon that portion of the ERISA plans' claims seeking to enforce their rights against the constructive trust. To the extent that such recovery is sought from settlements that Shrader has

already disbursed (although it surely retains at least a portion, namely the percentage it kept as a fee), the client has no current, direct interest in those funds. To the extent that such recovery is sought from "current" settlement proceeds actually (or soon to be) in Shrader's possession, the court can consider whether the Matched Claimants covered by ERISA plans have an interest in those funds sufficient to warrant their inclusion in this litigation.[85]

Plaintiffs argue that the Matched Claimants are not required parties because they seek neither to litigate the Matched Claimants' contractual obligations nor to obtain funds that belong to the Matched Claimants, but this argument is contradicted by allegations in their Amended Complaint that "[a]ll health benefit plans offered or administered by [the Plaintiffs] provide [them] a contractual right to reimbursement equal to the total amount paid by them for treatment of their Plan Members' Asbestos Injuries,"[86] they "seek the imposition of a constructive trust over a portion of the total Asbestos Recoveries made by each Matched Claimant equal to the amount necessary to fully reimburse the [Plaintiffs'] Health Plans for all health benefits provided to or an behalf of that Matched Claimant,"[87] and they "seek the imposition of an equitable

---

[85]Plaintiffs' Response, Docket Entry No. 68, pp. 17-19 (citing Longaberger, 586 F.3d at 459 (upholding equitable restitution claim against personal injury attorney who received, but disbursed, settlement on behalf of client who had received medical benefits from an ERISA plan); ACS Recovery Services, 723 F.3d at 526 (imposing constructive trust to enforce ERISA plan's equitable lien on settlement proceeds held by beneficiary's tort lawyer).

[86]Plaintiffs' Amended Complaint, Docket Entry No. 62, p. 4 ¶ 2.

[87]Id. ¶ 4.

lien to enforce their contractual rights to reimbursement pursuant to the terms of the health benefit plans under which they provided health benefits to Matched Claimants."[88]   Moreover, Plaintiffs' argument ignores the fact that whether the parties who received the benefits for which reimbursement was being sought were necessary parties under Rule 19 was not at issue in either <u>Longaberger</u> or <u>Griffin</u> because the ERISA plan members who received the medical benefits for which the plaintiffs in those cases sought to be reimbursed were, in fact, named defendants.

While Plaintiffs correctly argue that to the extent the Plaintiffs are only seeking the percentage of a recovery that Shrader kept as a fee for proceeds that have already been disbursed, Shrader's clients have no current, direct interest in the funds they seek, the Plaintiffs' claims are not limited to funds that Shrader kept as a fee.  In response to Shrader's motion to dismiss, Plaintiffs candidly acknowledge that

> [t]he ERISA Plans are seeking a constructive trust over any Asbestos Recoveries that remain in Shrader's possession, custody, or control, and an injunction to prevent the further distribution of those amounts and any amounts that may come into Shrader's possession while this action is pending.[89]

Plaintiffs also acknowledge that "[t]o the extent that such recovery is sought from 'current' settlement proceeds actually (or soon to be) in Shrader's possession, the court can consider whether

---

[88]<u>Id.</u>

[89]Plaintiffs' Response, Docket Entry No. 68, p. 18.

the Matched Claimants covered by ERISA plans have an interest in those funds sufficient to warrant their inclusion in this litigation."[90]  But Plaintiffs have not provided the court either allegations of fact or evidence from which the court can decide such an issue.  Nor have Plaintiffs cited any case in which an ERISA plan fiduciary seeking reimbursement for medical benefits provided to a plan member brought an action seeking imposition of a constructive trust on settlement proceeds without naming the plan member who received the medical benefits as a defendant.  Because neither the Plaintiffs' Amended Complaint nor the Plaintiffs' Response to Shrader's motion provide the court information sufficient to distinguish the Matched Claimants that have no current interest in settlement proceeds in Shrader's possession from those that do, the court is forced to conclude that the Plaintiffs' seek funds that belong not only to Shrader but also to the Matched Claimants.  Because the Matched Claimants claim an interest in the subject matter of the Plaintiffs' action, _i.e._, the recoveries that Shrader has obtained for their asbestos injuries, the court concludes that the Matched Claimants are required and that proceeding without them would not only impair the Matched Claimants' ability to protect their interests in their asbestos recoveries, but also would subject Shrader to substantial risk of incurring inconsistent obligations, _i.e._, that the Matched

_____

[90]_Id._ at 19.

Claimants would demand from Shrader the same funds that Plaintiffs are demanding.

    (b)   The Current Record is Not Sufficient for the Court to Determine Whether Joinder is Feasible

Because the court has concluded that the Matched Claimants are required parties, the court must determine whether joining them is feasible. Shrader argues that "joining the Matched Claimants is not feasible because many of [them] are not subject to personal jurisdiction in Texas."[91] Shrader explains that

> approximately half of the Matched Claimants identified by the [plaintiffs] in their Original Complaint are residents of other states, and all of them filed their personal injury lawsuits related to asbestos exposure in Illinois[, and plaintiffs'] alleged injuries do not arise out of any contacts between the Matched Claimants and Texas.[92]

Lack of personal jurisdiction is one reason joinder may not be feasible. See Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 599, 707 (5th Cir. 2009) ("[I]f an indispensable party cannot be joined (because there is no personal jurisdiction or because joinder would destroy diversity of citizenship), dismissal may be appropriate.").

Plaintiffs respond that joining the Matched Claimants is feasible at least as concerns the claims asserted by ERISA plan fiduciaries because § 502(e) of ERISA, 29 U.S.C. § 1132(e),

---

[91]Defendant's Memorandum, Docket Entry No. 64, p. 19.

[92]Id. at 19-20.

provides a statutory grant of jurisdiction allowing nationwide service of process. Citing <u>Bellaire General Hospital v. Blue Cross Blue Shield of Michigan</u>, 97 F.3d 825-26 (5th Cir. 1996), plaintiffs argue that "[b]ecause the Health Plans are asserting ERISA claims, this Court will have personal jurisdiction over any necessary party, including Shrader's clients."[93] Plaintiffs also argue that

> [e]ach of Shrader's clients has at least some contact with Texas related to the subject matter of this action. For example, at least half of them live in Texas, and all of them contracted with Shrader — a Texas law firm — to pursue the very recoveries upon which the Health Plans' claims are based. While they may have filed their lawsuits in Illinois, the communications they had with their counsel to evaluate those claims and prepare those complaints likely involved substantial contact with individuals in Texas. Moreover, presumably all of them have received, or will receive, their settlement proceeds through Shrader. Accordingly, regardless of the basis, ERISA's nationwide service of process provision or basic principles of personal jurisdiction, this Court has personal jurisdiction over each of Shrader's clients.[94]

Even though ERISA provides a statutory grant of jurisdiction allowing nationwide service of process, the court is unable to conclude that joinder of all the Matched Claimants would be feasible because Plaintiffs have not identified which of the Matched Claimants allegedly owe reimbursements to ERISA plans and which owe reimbursements to Medicare Advantage Plans. Nor have Plaintiffs identified which Matched Claimants reside in Texas and which reside elsewhere, or cited any case holding that an out-of-state resident's retention of a Texas law firm to provide

---

[93]Plaintiffs' Response, Docket Entry No. 68, p. 20.

[94]<u>Id.</u> at 20-21.

representation in out-of-state litigation provides a sufficient basis for this court to assert personal jurisdiction. Because the Plaintiffs' allegations demonstrate that all of the Matched Claimants are required parties, but provide no basis for the court to determine whether joinder of all the Matched Claimants is feasible, the court concludes that the current record is insufficient to determine which, if any, of the Matched Claimants are indispensable parties. Accordingly, Shrader's Motion to Dismiss for failure to join indispensable parties will be denied without prejudice to being reurged once Plaintiffs have identified (1) the Matched Claimants and their states of residence, (2) the plans pursuant to which each Matched Claimant allegedly owes reimbursement, (3) the terms of those plans that entitle Plaintiffs to reimbursement, and (4) as to each Matched Claimant, the extent to which Plaintiffs seek recovery from current settlement proceeds actually or soon to be in Shrader's possession, and the extent to which Plaintiffs seek recovery only from those portions of settlement proceeds that Shrader has withheld for its fees.

After Shrader filed the pending Motion to Dismiss, the Plaintiffs responded thereto, and Shrader replied, the parties sent a letter to the court dated May 2, 2017 (Docket Entry No. 71), describing disputes that they were having over certain provisions of a draft protective order, and asking the court to resolve the disputes and enter a protective order. The disputes over the draft protective order involve three paragraphs that concern Plaintiffs'

ability to review information produced by Shrader about its clients. In the May 2, 2017, letter to the court, the parties explain that Plaintiffs seek a protective order containing their proposed language for the disputed paragraphs because

> [i]n order to identify additional Shrader clients who have recovered or will recover settlement payments for their asbestos-related injuries, i.e., match Shrader's clients' information with Plaintiffs' internal plan member information, and thus, determine the full extent of Plaintiffs' claims against Shrader, Plaintiffs' in-house counsel, officers, directors, and/or employees must have access to the information produced by Shrader about its clients. Without access to this information, Plaintiffs[] will have no way to match newly discovered claimants with their records.[95]

The parties also explain that Shrader seeks a protective order containing its proposed language for the disputed paragraphs because

> [e]ntering the [Plaintiffs'] proposed protective order — without Shrader's suggested edits — would permit disclosure of personal and confidential information to the [Plaintiffs] about countless individuals with whom the [Plaintiffs] *have no contractual relationship whatsoever* — and thus no conceivable basis for access to such information — in the hopes that this confidential data dump will yield information about *some* individuals whom the [Plaintiffs] did insure and against whom the [Plaintiffs] may wish to assert a claim. In other words, the [Plaintiffs] seek to conscript Shrader in building a case *against its own clients*.[96]

On May 12, 2017, the court held a hearing on the protective order disputes and ordered the parties to provide briefing on the various issues (Hearing Minutes, Docket Entry No. 75). On July 26,

---

[95]Docket Entry No. 71, p. 3.

[96]Id.

2017, the parties entered a Temporary Protective Order (Docket Entry No. 81). Soon thereafter Plaintiffs filed a Motion for Preliminary Injunction (Docket Entry No. 82), which was withdrawn on October 3, 2017, pursuant to Plaintiffs' Notice of Withdrawal of Motion for Preliminary Injunction (Docket Entry No. 89). Nevertheless, the exhibits attached to Plaintiffs' Motion for Preliminary Injunction appear to contain information relevant to the question of whether the Matched Claimants are indispensable parties. The parties will therefore be ordered to advise the court within fourteen (14) days from the entry of this Memorandum Opinion and Order whether they now have all the information needed to fully address the indispensable-parties issue and, if not, what information they still need, from what source they expect to obtain the needed information, how much time will be required to obtain that information, and whether the Temporary Protective Order now in place suffices for purposes of disclosing information about the Matched Claimants.

### III. __Motion to Sever__

Citing Federal Rule of Civil Procedure 20, and In re Vioxx Products Liability Litigation (Vioxx II), 2008 WL 4681368, at *4 (E.D. La. October 21, 2008), Shrader argues that "[j]oinder of plaintiffs is inappropriate in this action because the [Plaintiffs'] claims do not share common questions of law or fact and do not arise out of the same transaction or occurrence."[97]

---

[97]Defendant's Memorandum, Docket Entry No. 64, p. 49.

Shrader argues that the Plaintiffs' claims do not share common issues of law or fact because each plaintiff

> brings different claims against Shrader; those claims are premised on different health benefit plans (i.e., different ERISA plans, different Medicare Advantage plans . . .), between different parties, containing different language. Moreover, each plan beneficiary received (or may receive) different recoveries based on the individual circumstances surrounding that beneficiary's exposure to asbestos, and received (or may receive) unique medical care that may or may not relate to asbestos exposure and thus that may or may not support a reimbursement claim based on asbestos-related recoveries. Rule 20's common question requirement is not satisfied under these circumstances.[98]

For essentially the same reasons, Shrader argues that the Plaintiffs' claims do not arise out of the same transaction or occurrence.[99] Shrader argues that severance is warranted for the additional reasons that joinder of Plaintiffs would unduly prejudice it and its clients and would not facilitate judicial economy.[100] Shrader argues that

> [t]he purposes of Rule 20 are not served by a single proceeding encompassing an indeterminate number of health benefit plans applicable to at least fifteen different beneficiaries and the highly individualized factual circumstances under which beneficiaries received medical benefits under those plans.[101]

---

[98]_Id._ at 50-51.

[99]_Id._ at 51-52.

[100]_Id._ at 52-54.

[101]_Id._ at 53.

Shrader argues that the highly confidential nature of the information underlying this litigation underscores the impropriety of joinder.[102]

Plaintiffs respond that severance is neither necessary nor required in this case because they seek to recover for the harm that Shrader's misconduct has caused them, and Shrader's actions and knowledge will be a central issue in resolving each claim, which will be decided under the same legal framework.[103]

Rule 20 creates a two-prong test, "allowing joinder of plaintiffs when (1) their claims arise out of the 'same transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 521 (5th Cir. 2010) (citations omitted). Shrader's severance argument takes too strict an approach to this liberal two-prong test, which the court finds is met at least in this early stage of the case. The first prong is met because Plaintiffs' claims all arise out of the same allegedly illegal practices, <u>i.e.</u>, Plaintiffs' allegations that "Shrader has continually, over a period of years, collected and disbursed tort settlements without first accounting for the Health Plans' rights."[104] In addition,

---

[102]<u>Id.</u> at 54.

[103]Plaintiffs' Response, Docket Entry No. 68, pp. 34-37.

[104]<u>Id.</u> at 35.

Plaintiffs' claims share several common questions of both law and fact, and thus the second prong of the Rule 20 test — which requires only one such common question — appears to be met. Acevedo, 600 F.3d at 521. The common questions of law shared by the Plaintiffs' claims concern the reach and scope of the Secondary Payer Act and ERISA, and the common questions of fact concern Shrader's knowledge about the health plans' rights.

The primary case on which Shrader relies, Vioxx II, 2008 WL 4681368, is distinguishable. In Vioxx II a group of ERISA health plan sponsors and administrators (the "Plan Plaintiffs") filed a complaint against the Vioxx Settlement Claims Administrator seeking to enjoin distribution of settlement funds to Vioxx claimants in order to protect reimbursement rights allegedly provided in various plan documents. See Vioxx II, 2008 WL 4681368, at *3-*4. Granting the Claims Administrator's motion to sever under Rule 20, the court held that the Plan Plaintiffs' ERISA claims did not share common questions of law or fact because (1) the terms of each benefit plan required "distinct legal analyses," id. at *5-*6, and (2) the reimbursement claims were dependent "on individual facts and circumstances related to each health plan and its individual beneficiaries." Id. at *7. The court rejected the Plan Plaintiffs' argument that their claims arose "from a single transaction—the Vioxx settlement fund." Id. The court explained that the "settlement itself did not give rise to the Plaintiffs' claims; rather, the claims arose out of

reimbursement provisions in the health plans' contracts with an unknown number of unidentified claimants." Id. at *8. The court emphasized that the Plan Plaintiffs entered into separate policies with each of their beneficiaries and, consequently, the reimbursement claims arose out of each policy and thus were predicated on different transactions. Id.

Shrader argues that this case is factually and legally indistinguishable from Vioxx II because each plaintiff brings different claims against it, those claims are premised on different health benefit plans containing different language, and each claim arises out of a separate transaction — the individual health plan applicable to each Matched Claimant.[105] But the Plaintiffs' Amended Complaint does not contain facts that allow the court to determine whether the individual health plans applicable to each Matched Claimant are, in fact, different and contain different language. Accordingly, Shrader's motion to sever will be denied without prejudice to being reurged once plaintiffs have made the identifications listed at the end of the preceding section.

## IV.  Conclusions and Order

Defendant Shrader & Associates LLP's Motion to Dismiss, for a More Definite Statement, and to Sever (Docket Entry No. 63) is **GRANTED IN PART and DENIED IN PART** as follows:

---

[105]Defendant's Memorandum, Docket Entry No. 64, p. 51.

(1) For the reasons discussed in § II.A, above, Shrader's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and motion for a more definite statement are **DENIED.**

(2) For the reasons discussed in § II.B, above, Shrader's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted is **GRANTED** as to Plaintiffs' claims for unjust enrichment/money had and received and is **DENIED** in all other respects.

(3) For the reasons stated in § II.C, above, Shrader's motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join indispensable parties is **DENIED WITHOUT PREJUDICE.**

(4) For the reasons stated in § III, above, Shrader's motion to sever is **DENIED WITHOUT PREJUDICE.**

For the reasons stated in § II.C and § III, above, the parties are **ORDERED** to advise the court within fourteen (14) days, whether they now have all the information needed to fully address the indispensable parties and severance issues (e.g., identifications of (1) the Matched Claimants and their states of residence, (2) the plans pursuant to which each Matched Claimant allegedly owes reimbursement, (3) the terms of those plans, and (4) as to each Matched Claimant, the extent to which plaintiffs seek recovery from current settlement proceeds actually or soon to be in Shrader's possession, and the extent to which Plaintiffs seek recovery only from those portions of settlement proceeds that Shrader has withheld for its fees). If the parties need additional information, they shall state in their advice to the court what

information they need, from what source they expect to obtain the needed information, and how much time will be required to obtain that information. The parties shall also state in their advice to the court whether the Temporary Protective Order now in place suffices for purposes of disclosing this information about the Matched Claimants. Once the advice to the court is filed, the court will decide whether to set a scheduling conference or to enter a new docket control order.

Because the disputes -- over whether the Matched Claimants named in the Plaintiffs' Amended Complaint are indispensable parties, and whether the claims of the three Plaintiffs should be severed -- cannot be resolved at this time, and because resolution of these disputes will impact the development of the case, the court concludes that the Amended Docket Control Order should be vacated pending resolution of these disputes. Accordingly, the Amended Docket Control Order (Docket Entry No. 91) is **VACATED**, and the Joint Motion for Continuance (Docket Entry No. 92) is **DENIED AS MOOT**.

**SIGNED** at Houston, Texas, on this the 16th day of March, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE